Opinion Issued November 10, 2004















 

In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-01211-CR
NO. 01-03-01212-CR
____________
 
JAMES JORDAN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 

On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause Nos. 966759 and 945613 


 
 
 
 
MEMORANDUM OPINION
          In a single proceeding, a jury found appellant, James Jordan, guilty of the
offenses of delivery


 and possession


 of a controlled substance, namely cocaine,
weighing less than one gram. After finding true the allegations in two enhancement
paragraphs in each case that appellant previously had been convicted of two felony
offenses, the trial court assessed appellant’s punishment at confinement for two years
for each of the instant offenses. In two points of error in his appeal from his delivery
conviction, appellant contends that the evidence was legally and factually insufficient
to support his conviction because the State failed to rebut appellant’s mistaken-identification evidence beyond a reasonable doubt. In four points of error in his
appeal from his possession conviction, appellant contends that the evidence was
legally and factually insufficient to support his conviction because the State failed
to rebut appellant’s mistaken-identification evidence beyond a reasonable doubt and
because the State failed to affirmatively link appellant to the narcotics recovered by
police officers. We affirm.
 
 
Facts
          Houston Police Officer D. Bogaard testified that, on April 14, 2003, he was
investigating narcotics activities in an undercover capacity in the Fourth Ward, an
area immediately west of downtown Houston which was known to Bogaard for its
high crime and narcotics activities. At around 12:45 p.m., while driving slowly down
Valentine Street in an unmarked patrol car and not wearing a uniform, he made eye-contact with appellant, who was sitting under a tree in a vacant lot. Three or four
persons were sitting in the area. Appellant stood, looked at Bogaard, and Bogaard
nodded. Appellant then motioned for Bogaard to turn onto Ruffin Street. Bogaard
explained that in his training and experience, appellant wanted him to stop at the
roadside and appellant would then approach him to “make a deal.” Bogaard stopped
on the north side of Ruffin Street. Appellant approached him, asked how much
Bogaard needed, and Bogaard told appellant that he needed “25,” which meant that
Bogaard wanted to buy $25 worth of crack cocaine. Bogaard knew that appellant was
referring to crack cocaine when appellant asked how much Bogaard wanted to buy
from him because “so much crack cocaine [was] being sold in that whole area
immediately west of downtown.” Appellant then took off his hat, which contained
a “little piece of white plastic” that looked like it had been “ripped off from a
shopping bag.” When appellant opened the bag, Bogaard saw “several little rocks”
that appeared to be crack cocaine. Appellant handed Bogaard one of the rocks, and
Bogaard handed appellant $25. Bogaard thanked appellant, and appellant wrapped
the bag and walked back toward the tree. 
          Bogaard further testified that, although he was not wearing audio or video
devices during the transaction, he was under surveillance by other police officers. 
Once he drove away, he contacted uniformed officers from his patrol car radio and
gave them appellant’s description, including appellant’s age, height, weight, clothing,
and location. 
          Houston Police Officer T. Hollier testified that, on April 14, 2003, he assisted
in the narcotics investigation while driving a marked patrol car and wearing a
uniform. Hollier was in radio contact with Bogaard throughout the investigation. 
When Bogaard completed the narcotics transaction with appellant, he notified Hollier
using his patrol car radio and described appellant’s clothing and location. Hollier and
his partner spotted appellant in the vacant lot within 30 to 40 seconds of Bogaard’s
radio broadcast. Hollier then saw appellant “with a closed hand lean over and
[appellant] appeared to place something inside of an object sitting next to [him].” 
Hollier and his partner then approached appellant and arrested him. Hollier did not
find any crack cocaine on appellant’s person during the search after appellant’s arrest. 
However, he found three rocks of what appeared to be crack cocaine wrapped in a
“very small piece of white plastic sitting right on top of [a] bag” that was laying on
the ground next to where appellant had been sitting and leaning. The substance later
field-tested positive as crack cocaine. Next to the crack cocaine, Hollier found one
$20 bill and one $5 bill, which he later learned was the pre-marked money used by
Bogaard in the undercover transaction with appellant.
          Kerry Adams, a criminologist in the controlled substance section of the
Houston Police Department Crime Lab, testified that the “rock” that appellant gave
to Officer Bogaard and the three “rocks” recovered by Officer Hollier each tested
positive for cocaine. The crack cocaine given to Bogaard weighed approximately 0.1
grams, and the crack cocaine recovered by Hollier weighed approximately 0.3 grams.
          Kerry Simms testified that he and appellant had been friends for about two
years. On April 14, 2003, he and appellant had arranged to meet near the corner of
Cushing and Valentine streets in the Fourth Ward in a vacant lot. Simms was with
appellant from about 11:00 a.m. to 1:45 p.m. During that time, appellant and Simms
talked and drank beer. Appellant did not approach any vehicles or any persons and
did not participate in any narcotics transactions during that time. Rather, appellant
sat in the same spot until the police officers arrived. Furthermore, Simms never saw
appellant standing or sitting in the area where the bag containing the crack cocaine
was recovered by the officers. However, Simms and appellant saw at least two other
persons approach cars to engage in narcotics transactions, and they saw other illegal
activity occurring in the lot. Simms also was present when the officers arrested
appellant, and Simms testified that an officer found the crack cocaine in a brown bag
that was located in a tire. Sufficiency of the Evidence
Legal Sufficiency
          In his first point of error in both appeals, appellant argues that the evidence was
legally insufficient to support his convictions because the State failed to rebut
appellant’s mistaken-identification evidence beyond a reasonable doubt. In his third
point of error in his appeal from his possession conviction, appellant argues that the
evidence was legally insufficient to support his conviction because the State failed
to affirmatively link appellant to the crack cocaine found in the bag recovered by
Officer Hollier. 
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine if any rational fact finder could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In a legal sufficiency review, we may
not substitute our own judgment for that of the fact finder. Jones v. State, 944 S.W.2d
642, 648 (Tex. Crim. App. 1996).
          A person commits the offense of delivery of a controlled substance if he
knowingly or intentionally delivers a controlled substance, including cocaine. Tex.
Health & Safety Code Ann. §§ 481.112(a), 481.102(3)(D) (Vernon 2003 & Supp.
2004-2005); Jackson v. State, 84 S.W.3d 742, 744 (Tex. App.—Houston [1st Dist.]
2002, no pet.). A person commits the offense of possession of a controlled substance
if he knowingly or intentionally possesses a controlled substance, including cocaine. 
Tex. Health & Safety Code Ann. §§ 481.115(a), 481.102(3)(D) (Vernon 2003 &
Supp. 2004-2005); see King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995);
Roberson v. State, 80 S.W.3d 730, 734-35 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d). 
          Mistaken Identification
              Appellant asserts that “the identification of the appellant by the police was
questionable at best,” and that “[u]nder the facts and circumstances of this case, the
State’s evidence against appellant [is] simply not credible.” Appellant notes correctly
that Officer Bogaard testified that “appellant had delivered cocaine to Bogaard from
a stash concealed under appellant’s hat.” However, appellant asserts that (1) it is
“undisputed at trial that no electronic or film surveillance of the alleged offense was
made or even attempted”; (2) “no physical evidence was found on the appellant
linking him to the alleged delivery offense”; and (3) “appellant never gave an oral or
written statement regarding this offense.” Finally, appellant emphasizes that Kerry
Simms, appellant’s companion, testified that appellant never engaged in selling
cocaine. 
          However, the positive identification of a defendant as the perpetrator of a crime
is legally sufficient to support a conviction. Everett v. State, 707 S.W.2d 638, 639-40
(Tex. Crim. App. 1986); Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App.
1978); Ford v. State, 509 S.W.2d 317, 318 (Tex. Crim. App. 1974). In this case,
Bogaard testified that appellant made eye-contact with him, motioned for Bogaard to
stop his car, approached Bogaard, and asked him “how much” Bogaard wanted. 
Bogaard also testified that appellant reached into his hat to retrieve what appeared to
be several rocks of crack cocaine wrapped in a white plastic bag. Finally, Bogaard
testified that, immediately after the narcotics transaction, he gave a detailed
description of appellant and his location to Hollier and the other arresting officers. 
Officer Hollier testified that he spotted appellant, who matched Bogaard’s
description, within 30 to 40 seconds after being contacted. Furthermore, Hollier saw
appellant leaning over to his side as if to place something down next to himself. 
Hollier further testified that, next to the area where appellant had been sitting just
before his arrest, Hollier found a bag containing three rocks of crack cocaine wrapped
in white plastic, as well as the pre-marked money that Bogaard had used to buy the
crack cocaine.
          Considering this evidence, a rational fact finder could have found, beyond a
reasonable doubt, that appellant was the perpetrator of the offenses of delivery and
possession of a controlled substance. Accordingly, we overrule appellant’s first point
of error in each appeal.
          Affirmative Links
          Appellant contends that there are insufficient affirmative links to connect him
to the possession of the crack cocaine recovered by Officer Hollier because, although
“Hollier testified that he recovered a bag containing crack cocaine on the ground from
near where the officer had seen the appellant sitting, . . .[i]t was undisputed that other
individuals were also present in the park.” Thus, appellant concludes that “it simply
cannot be said that the appellant’s mere proximity to the bag [is] sufficient to
establish his control over the same.” In support of his contention, appellant argues
that the mere fact that an accused has some sort of ownership rights over the premises
upon which narcotics are found is not sufficient to support a finding of joint
possession when the premises are also occupied by others.
          To establish the unlawful possession of a controlled substance, the State must
show that a defendant (1) exercised care, custody, control, or management over the
controlled substance, and (2) knew that he possessed a controlled substance. See
Tex. Health & Safety code Ann. §§ 481.002(38), 481.115(a) (Vernon 2003 & 
Supp. 2004-2005); see King, 895 S.W.2d at 703; Roberson, 80 S.W.3d at 734-35. 
The State may prove that a defendant knowingly possessed contraband by offering
circumstantial evidence affirmatively linking him to the contraband. Brown v. State,
911 S.W.2d 744, 746-48 (Tex. Crim. App. 1995). The State need not show that the
defendant exercised exclusive control over the controlled substance, but when the
defendant does not have exclusive control, the State must show additional affirmative
links between the defendant and the contraband. Cedano v. State, 24 S.W.3d 406,
411 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The affirmative links must raise
a reasonable inference that the accused knew of and controlled the contraband. 
Dickerson v. State, 866 S.W.2d 696, 700 (Tex. App.—Houston [1st Dist.] 1993, pet.
ref’d).          
          Factors that may be considered to establish affirmative links include (1) the
defendant’s presence when the search was executed; (2) whether the narcotics were
in plain view; (3) the defendant’s proximity to and accessibility of the narcotics;
(4) whether the defendant was under the influence of narcotics when arrested; (5) the
defendant’s possession of other narcotics when arrested; (6) the defendant’s
incriminating statements; (7) the defendant’s attempted flight; (8) the defendant’s
furtive gestures; (9) the presence of an odor of the narcotics; (10) the presence of
other narcotics or narcotics paraphernalia; (11) the defendant’s ownership or right to
possession of the place where narcotics were found; and (12) whether the narcotics
were found in an enclosed place. Williams v. State, 859 S.W.2d 99, 101 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d). Despite this list of factors, there is no
set formula necessitating a finding of an affirmative link; rather, affirmative links are
established by the totality of the circumstances. Sosa v. State, 845 S.W.2d 479, 483
(Tex. App.—Houston [1st Dist.] 1993, pet. ref’d). 
          Here, Officer Bogaard testified that, after he made eye-contact with appellant,
appellant motioned for him to stop his car. Appellant then approached Bogaard and
asked how much Bogaard needed, and Bogaard told appellant that he needed “25.” 
Bogaard testified that appellant removed his hat, which contained a “little piece of
white plastic” that looked like it had been “ripped off from a shopping bag.” Bogaard
further testified that, when appellant opened the bag, Bogaard saw “several little
rocks” that appeared to be crack cocaine and that appellant then sold him one rock for
$25. Officer Hollier testified that when he first saw appellant, appellant leaned over
with a closed hand and appeared to place something inside an object sitting next to
appellant. Hollier then found a bag containing three rocks of crack cocaine wrapped
in a small piece of white plastic next to where appellant had been sitting and in the
same area where Hollier had seen appellant lean earlier. Hollier also found one $20
bill and one $5 bill next to the rocks of crack cocaine, which he later learned was the
pre-marked money that Bogaard had used in the undercover narcotics transaction with
appellant. 
           Considering this evidence, a rational fact finder could have found, beyond a
reasonable doubt, that the appellant knew of and controlled the cocaine found in the
bag recovered by Officer Hollier. 
          We overrule appellant’s third point of error in his appeal from his possession
conviction.
Factual Sufficiency
          In his second point of error in each appeal, appellant argues that the evidence
was factually insufficient to support his convictions because the State failed to rebut
appellant’s mistaken-identification evidence beyond a reasonable doubt. In his fourth
point of error in his appeal from his possession conviction, appellant argues that the
evidence was factually insufficient to support his conviction because the State failed
to affirmatively link him to the crack cocaine found in the bag recovered by Officer
Hollier.
           In our review of the factual sufficiency of the evidence, we view all of the
evidence neutrally, and we ask whether the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s determination, or whether the proof of guilt, although adequate if taken
alone, is greatly outweighed by contrary proof. Zuniga v. State, 144 S.W.3d 477,
484-85 (Tex. Crim. App. 2004). Although our analysis considers all the evidence
presented at trial, the trier of fact is the exclusive judge of the facts, the credibility of
the witnesses, and the weight to be given to their testimony. Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). Unless the available record clearly reveals
a different result is appropriate, an appellate court must defer to the jury’s
determination concerning what weight to give contradictory testimonial evidence
because this resolution often turns on an evaluation of the credibility and demeanor
of the witnesses, and the jurors were in attendance when the testimony was delivered. 
Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).
          Mistaken Identification
          In addition to the arguments that he asserted under his legal sufficiency points
of error, appellant argues that the evidence was factually insufficient to support his
convictions because (1) he produced testimony that he had not engaged in selling
narcotics, and (2) no physical evidence corroborated Bogaard’s testimony that
appellant had removed cocaine from his hat. Kerry Simms, appellant’s friend,
testified that appellant did not approach any person or vehicle during the time that
they were together. Rather, Simms testified that appellant remained seated in the
same spot the entire time. 
          However, Bogaard testified that appellant made eye-contact with him, 
motioned for him to stop his car, and asked Bogaard “how much” he wanted. 
Bogaard testified further that appellant sold to him a “rock” of crack cocaine for $25,
and Hollier testified that he spotted appellant 30 to 40 seconds after receiving
appellant’s description from Bogaard. Additionally, Hollier saw appellant lean down
as if to place something beside appellant, and Hollier found a bag containing three
rocks of crack cocaine in the area where appellant had been sitting. Hollier also
found one $20 bill and one $5 bill, which he later learned was the pre-marked money
that Bogaard used in the undercover narcotics transaction with appellant. 
          We note that Officer Bogaard testified that appellant was the person from
whom he purchased a rock of crack cocaine and that appellant had several rocks of
crack cocaine wrapped in the plastic bag. We also note that Officer Hollier found
three rocks of cocaine in the area where appellant had been sitting, along with the pre-marked money Bogaard had used in the transaction with appellant. As the exclusive
judges of the facts, the credibility of the witnesses, and the weight to be given their
testimony, the jury was free to believe or disbelieve all or any part of the officers’ or
Simms’s testimony. McKinny v. State, 76 S.W.3d 463, 468-69 (Tex. App.—Houston
[1st Dist.] 2002, no pet.). Where conflicting testimony is given, as in this case, it is
the exclusive province of the jury to reconcile conflicts in the evidence. Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Viewing all of this evidence
neutrally, we conclude that the evidence was not so obviously weak as to undermine
our confidence in the jury’s determination and was not so greatly outweighed by
contrary proof as to indicate that a manifest injustice has occurred. Accordingly, we
hold that the evidence was factually sufficient to support the jury’s finding that
appellant was the perpetrator of the offenses of delivery and possession of a
controlled substance. 
          We overrule appellant’s second point of error in each appeal.
          Affirmative Links
          In support of his argument that the evidence was factually insufficient to
support his conviction for the offense of possession of a controlled substance,
appellant emphasizes the fact that he was not the only person in the vacant lot when
the crack cocaine was found. He notes that Bogaard testified that three or four other
people were also in the lot and that Simms testified that other people in the lot were
engaging in narcotics transactions and other illegal activity. As noted above, Simms
also testified that he did not see appellant engage in any narcotics transactions during
the time that they were together that day.
          However, Bogaard testified that appellant sold to him one rock of crack
cocaine, which appellant had stored in his hat in a white piece of plastic, which held
several other rocks of crack cocaine. Furthermore, Hollier testified that, when he first
spotted appellant, appellant was leaning down with a closed hand as if he were
placing an object beside him. Hollier testified that he found three rocks of crack
cocaine wrapped in a small piece of white plastic in the area where appellant had been
sitting before he was arrested. Finally, Hollier testified that he found the pre-marked
money that Bogaard had handed to appellant in exchange for the crack cocaine in the
undercover investigation.
          Again, as the exclusive judges of the facts, the credibility of the witnesses, and
the weight to be given their testimony, the jury was free to believe or disbelieve all
or any part of the officers’ or Simms’s testimony. McKinny, 76 S.W.3d at 468-69. 
Where conflicting testimony is given, it is the exclusive province of the jury to
reconcile conflicts in the evidence. Wesbrook, 29 S.W.3d at 111. Viewing all of this
evidence neutrally, we conclude that the evidence was not so obviously weak as to
undermine our confidence in the jury’s determination and was not so greatly
outweighed by contrary proof as to indicate that a manifest injustice has occurred. 
Accordingly, we hold that the evidence was factually sufficient to affirmatively link
appellant to the crack cocaine recovered by Officer Hollier.
          We overrule appellant’s fourth point of error in his appeal from his possession
conviction. 
Conclusion
          We hold that the evidence was legally and factually sufficient to support
appellant’s convictions for delivery and for possession of a controlled substance. We
affirm the judgments of the trial court.
 
 
 
                                                                        Terry Jennings
                                                                        Justice
Panel consists of Justices Taft, Jennings, and Bland.
Do not publish. Tex. R. App. P. 47.2(b).