Opinion issued November 30, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00902-CR

———————————

Charlie Mack
Thomas, Jr., Appellant

V.

State of Texas, Appellee



 



 

On
Appeal from the 300th District Court

Brazoria
County, Texas



Trial Court Case No. 54,165

 



 

O P I N I O N

Appellant, Charlie Mack Thomas, Jr., was
charged by indictment with the felony offense of driving while intoxicated.[1]  Appellant pleaded not guilty to the charge
and pleaded true to five enhancement paragraphs.[2]  The jury found appellant guilty of the felony
offense of driving while intoxicated and assessed punishment at 40 years’
confinement.  In fifteen points of error,
appellant challenges (1) the trial court’s denial of his motion to suppress;
(2) the inclusion and exclusion of certain evidence during the guilt-innocence
phase of the trial; (3) the sufficiency of the testimony of one of the
witnesses involved in laying the predicate for the breath test results; (4) the
exclusion of an argument about the application of the law in appellant’s
closing argument during the guilt-innocence phase of the trial; (5) the
inclusion of certain provisions in the jury charge; and (6) the trial court’s
denial his motion for mistrial for jury misconduct.

We affirm.

                                                                                                                                                                
Background

On the evening of March 15, 2007, Officer Michael Diaz—a
police officer employed at the time by the city of Sweeny, Texas—had
transported a prisoner to the jail in West Columbia and was en route back to
Sweeny.  While he was still in West
Columbia, a car suddenly turned left in front of him forcing him to apply his
brakes quickly in order to avoid colliding with the car.  The driver—appellant, Charlie Mack Thomas,
Jr.—did not use a signal prior to the turn. 
Appellant came to a complete stop with his car partially in the gas
station lot he was entering and partially still in the street.  One of the back-seat passengers opened his
door for a few seconds.  The door closed
and appellant continued into the gas station lot.

Officer Diaz followed appellant onto the gas station
lot.  Appellant parked next to a gas
pump, and Officer Diaz parked his car behind appellant’s car.  Officer Diaz approached appellant and began
asking him questions.  Officer Diaz
smelled alcohol on appellant’s breath.

Subsequently, Officer Cole, a police officer employed by
West Columbia, Texas, and Officer Stallman, a Texas State Trooper, arrived on
the scene.  Officer Stallman performed a
field sobriety test on appellant.  He
determined that the test indicated that appellant was intoxicated.  He asked appellant whether he was willing to consent
to a breath test.  Officer Stallman asked
appellant this repeatedly but could not get a clear answer.  Once Officer Stallman informed appellant that
he was going to take his refusal to answer as a refusal to consent to a breath
test, appellant stated he would consent to the test.  

Officer Stallman took appellant to the nearest police
station with breath testing equipment and performed the test on appellant.  The results showed that appellant was above
the legal limit for alcohol concentration. 
Based on his previous charges of driving while intoxicated, appellant
was charged with felony driving while intoxicated with five enhancement
paragraphs for other convictions.[3]

                                                                                                                                                  
Motion to Suppress

In his first five points of error and in his eighth point
of error, appellant challenges the trial court’s denial of his motion to
suppress evidence based on his claims that (1) the stop was impermissible
because Officer Diaz was outside of his jurisdiction and there was not probable
cause and (2) breath test results were coerced.

A.              
Standard of review

We review a trial court’s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d
666, 673 (Tex. Crim. App. 2007).  In
reviewing the trial court’s decision, we do not engage in our own factual
review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.  Wiede v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).  Therefore, we give almost total deference to
the trial court’s rulings on (1) questions of historical fact, even if the
trial court’s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application-of-law-to-fact questions that
turn on an evaluation of credibility and demeanor.  Amador,
221 S.W.3d at 673.  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court’s rulings on those
questions de novo.  Id.

Stated another way, when reviewing the trial court’s
ruling on a motion to suppress, we must view the evidence in the light most
favorable to the trial court’s ruling.  Wiede, 214 S.W.3d at 24.  When, as here, the trial court enters
findings of fact after denying a motion to suppress, we must determine whether
the evidence—viewed in the light most favorable to the trial court’s decision—supports
the findings.  State v. Kelly,
204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). 
We then review the trial court’s legal ruling de novo unless its
explicit fact findings that are supported by the record are also dispositive of
the legal ruling.  Id. at 819.  We must uphold
the trial court’s ruling if it is supported by the record and correct under any
theory of law applicable to the case, even if the trial court gave the wrong
reason for its ruling.  State v. Stevens, 235 S.W.3d 736, 740
(Tex. Crim. App. 2007).

B.              
Terry stop

In his first five points of error, appellant argues that
the motion to suppress should have been granted because there was no probable
cause for the stop and because the officer who witnessed appellant’s driving
was outside of his jurisdiction when he stopped appellant.

“An officer may conduct a brief investigative detention,
or ‘Terry stop,’ when he has a
reasonable suspicion to believe that an individual is involved in criminal
activity.”  Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)
(quoting Terry v. Ohio, 392 U.S. 1, 21,
88 S. Ct. 1868, 1880 (1968)).  For an
officer to conduct a Terry stop, (1)
the initial stop must be justified and (2) the scope of the investigation must
be reasonably related to the circumstances that justified the interference in
the first place.  Terry, 392 U.S. at 20, 88 S. Ct. at 1879.  The reasonableness of a temporary detention
must be examined in terms of the totality of the circumstances and will be
justified when the detaining officer has specific articulable facts, which,
taken together with rational inferences from those facts, lead him to conclude
that the person detained actually is, has been, or soon will be engaged in
criminal activity.  Balentine, 71 S.W.3d at 768. 


1.                
Officer Diaz’s authority to conduct the Terry stop

Appellant argues that the investigating officer was
outside of his jurisdiction and was not authorized to conduct an investigative
detention and that the detention was not permissible under Terry.  At the time of the
incident, Officer Diaz was employed as a police officer by the city of Sweeny,
Texas.  The Terry stop occurred, however, in West Columbia, Texas.  Appellant argues that this means he was not
authorized to initiate the Terry
stop.

Article 14.03(g)(2) of the Texas Code of Criminal
Procedure provides:

A peace officer listed in Subdivision (3), Article 2.12,
who is licensed under Chapter 1701, Occupations Code, and is outside of the officer’s
jurisdiction may arrest without a warrant a person who commits any offense
within the officer’s presence or view, except that an officer described in this
subdivision who is outside of that officer’s jurisdiction may arrest a person
for a violation of Subtitle C, Title 7, Transportation Code, only if the
offense is committed in the county or counties in which the municipality
employing the peace officer is located.

Tex. Code
Crim. Proc. Ann. art. 14.03(g)(2) (Vernon Supp. 2010).  Article 14.03 applies to Terry stops.  Brother v. State, 166 S.W.3d 255, 260
(Tex. Crim. App. 2005).

Officer Diaz testified he was a licensed police officer working
for Sweeny, Texas.  Accordingly, he was a
police officer under Subdivision (3), article 2.12 of the Texas Code of
Criminal Procedure and was licensed under chapter 1701 of the Texas Occupations
Code.[4]  Tex.
Code Crim. Proc. Ann. art. 2.12(3) (Vernon Supp. 2010); Tex. Occ. Code Ann. § 1701.301
(Vernon 2004).  He further testified that
both Sweeny and West Columbia are entirely within Brazoria County.

The only issue left, then, is whether the stop was based
on violations of subtitle C, title 7 of the Texas Transportation Code.  Officer Diaz testified that he was traveling
southbound on the same road on which appellant was traveling northbound when
appellant suddenly turned left, crossing in front of him.  Appellant did not use his blinker.  Appellant’s abrupt turn forced Officer Diaz
to quickly apply his brakes to avoid colliding into appellant. The car came to
a complete stop when half of the car was still extending into the road.  At that point, one of the back-seat
passengers opened his door, facing traffic, before closing it again.

Appellant’s failure to use a turn signal when turning left
provided a reasonable suspicion that he had violated section 545.104 of the
Texas Transportation Code.  See Tex.
Transp. Code Ann. § 545.104 (Vernon 1999).  Appellant’s failure to yield the right-of-way
to a vehicle when he turned left provided a reasonable suspicion that he had
violated section 545.152.  See Tex.
Transp. Code Ann. § 545.152 (Vernon 1999).  Appellant’s abrupt turn in front of Officer
Diaz that forced Officer Diaz to apply his brakes to avoid a collision provided
a reasonable suspicion that he had violated section 545.401.  See
Tex. Transp. Code Ann. § 545.401
(Vernon 1999).  When the back-seat
passenger opened his door, which was facing traffic, there was a reasonable
suspicion that the passenger was violating section 545.418.  See
Tex. Transp. Code Ann. § 545.418
(Vernon 1999).  All of these statutes are
within subtitle C, title 7 of the Texas Transportation Code.

Appellant argues that he presented witnesses in his motion
to suppress that contradicted each of Officer Diaz’s claimed violations that
formed the bases for the Terry stop.  It was the trial court’s responsibility to
resolve the conflicting evidence.  Wiede, 214 S.W.3d at 24–25.  Mere contradictions in the testimony do not
establish error in the trial court’s resolution of those conflicts.

Appellant argues that the Court of Criminal Appeals has held
that a police officer does not have authority to make stops or arrests outside
of his jurisdiction based on traffic violations.  See State
v. Kurtz, 152 S.W.3d 72, 79 (Tex. Crim. App. 2004).  Subsection 14.03(g)(2) of the Texas Code of
Criminal Procedure did not exist at the time that Kurtz was decided.  See Act of May 25, 2005, 79th Leg.,
R.S., ch. 1015, § 1, 2005 Tex. Gen. Laws 3290, 3433.  Accordingly, Kurtz has been superseded by the express language of the statute.

Appellant also argues that section 42.021 of the Texas
Local Government Code limits the extraterritorial jurisdiction of a
municipality and, accordingly, limited the jurisdiction of Officer Diaz.  See
Tex. Loc. Gov’t Code Ann. § 42.021
(Vernon 2008) (limiting extraterritorial jurisdiction of a municipality to
between half-mile to five miles, depending on size of city).  The extraterritorial jurisdiction of a police
officer of a municipality and of the municipality itself do not have to be
coterminous.  Section 42.021 of the Texas
Local Government Code does not conflict with or in any way limit article 14.03
of the Texas Code of Criminal Procedure.

We hold that Officer Diaz had jurisdictional authority to
initiate the Terry stop.

2.                
Basis for Terry
stop

The same possible violations of the Texas Transportation
Code that gave Officer Diaz extra-jurisdictional authority to conduct the Terry stop created the justification for
conducting the Terry stop.  Appellant argues that there was no
justification for the Terry stop
because he was not the one to open the back-seat door.  There is no requirement that justification
for the Terry stop be caused by the
driver of the vehicle or even the person ultimately charged with a crime.  See,
e.g., Strickland v. State, 923
S.W.2d 617, 620 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (holding
passenger could be detained and patted-down after driver failed to use blinker
in making a turn).  Furthermore, there
were multiple other possible violations of the law that were caused by him that
also provided Officer Diaz justification for initiating a Terry stop.

Under the second prong of Terry, the scope of the investigation must be reasonably related to
the circumstances that justified the interference in the first place.  Terry,
392 U.S. at 20, 88 S. Ct. at 1879.  Once he
approached appellant during the Terry
stop, Officer Diaz smelled alcohol on appellant’s breath and suspected he was
drunk.  “During an investigation of a
traffic violation, if an officer develops [a] reasonable suspicion that another
violation has occurred, the scope of the initial investigation expands to include
the new offense.”  Goudeau v. State, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th]
2006, no pet.).  Accordingly, at that
point, Officer Diaz’s investigative detention expanded to include driving while
intoxicated.

We hold the constitutional requirements to conduct a Terry stop were satisfied.[5]

3.                
Officer Diaz’s licensing as a police officer

In his motion for new trial, appellant argued that Officer
Diaz was not licensed as a police officer when he conducted the investigative
detention.  Appellant’s basis for this
argument was a document he presented showing that Officer Diaz did not complete
the minimum course training required by August 31, 2007.  The incident in question occurred in March
2007.  Even if Officer Diaz did not
complete his course training, his deadline to do so was after the date of the
incident.  Appellant has not presented
any evidence establishing that Officer Diaz’s license could have been revoked
prior to the deadline to complete his course training.

We overrule appellant’s first, second, third, fourth, and
fifth points of error.

C.              
Breath test results

In his eighth point of error, appellant argues that he was
coerced into taking the breath test and, as a result, the trial court should
have excluded the results of the test.

The only testimony regarding the voluntariness of
appellant’s breath test came from Officer Stallman.  Officer Stallman stated that not all of the
police stations in Brazoria County had breath test equipment.  The closest station did not have one.  Officer Stallman asked appellant whether he
would consent to a breath test in order to determine where he would take
appellant.  According to Officer Stallman,
appellant repeatedly gave nonresponsive answers to this question.  Ultimately, Officer Stallman told appellant
he was going to take his refusal to answer as a refusal to take a breath
test.  Appellant then said he would
consent to a breath test.  Officer
Stallman took appellant to a station with breath test equipment, and appellant
took the test.

Section 724.011 of the Transportation Code provides that a
person arrested for suspected driving while intoxicated is deemed to have
consented to the taking of samples for a breath or blood test.  See Tex. Transp. Code Ann. § 724.011(a)
(Vernon 1999).  Nevertheless, a suspect’s
consent to a breath test must be voluntary. 
Gette v. State, 209 S.W.3d 139,
145 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  For consent to a breath test to be deemed
“voluntary,” a suspect’s decision must not be the result of physical pressure
or psychological pressure brought to bear by law enforcement officials.  See
Thomas v. State, 723 S.W.2d 696, 704–05 (Tex. Crim. App. 1986) (noting that
consent to breath induced by physical force or mental coercion is involuntary).

The only evidence that even suggested that appellant’s
breath test was coerced were the statements by Officer Stallman that he could
not get a direct response from appellant regarding whether he would consent to
a breath test and that he told appellant he was going to take his refusal to answer
as a refusal to consent.  We hold that
this statement does not rise to the level of “psychological pressure brought to
bear by law enforcement officials.”

We overrule appellant’s eighth point of error.

                                                                                                                                          
Evidentiary Challenges

In his seventh, ninth, twelfth, and fourteenth points of
error, appellant argues that the trial court erred in (1) excluding appellant’s
exhibit regarding Officer Stallman’s notes for the field sobriety test; (2)
admitting the field sobriety video; and (3) admitting the results of
appellant’s breath test.[6]

A.              
Standard of review

A trial court’s ruling
on the admissibility of evidence is reviewed for an abuse of discretion. See
Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  An abuse of discretion occurs when the trial
court acts without reference to guiding rules or principles or acts arbitrarily
or unreasonably. Galliford v. State, 101 S.W.3d 600, 604 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d). We will affirm the trial court’s
ruling if it lies within the zone of reasonable disagreement. See Torres v.
State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

B.              
Officer
Stallman’s notes

Officer Stallman had a set of documents with him while he
was testifying about the field sobriety test he administered to appellant.  One of the documents in Officer Stallman’s
possession was the standardized field sobriety test scoring sheet.  When appellant attempted to ask Officer
Stallman questions based on the document, the State objected to hearsay and the
trial court sustained the objection. 
Appellant argues that he should have been allowed to have the document
admitted and discussed based on Rule 612 of the Texas Rules of Evidence.  

Under Rule 612 of the Texas Rules of Evidence, if a
witness uses a writing to refresh his memory while testifying, the adverse
party is entitled to have the writing produced and to introduce into evidence
those portions which relate to the testimony of the witness.  Tex.
R. Evid. 612.  Officer Stallman
testified that, although the document was in his possession while testifying,
he did not use it to refresh his testimony. 
Because Officer Stallman did not use the document to refresh his memory
while testifying, Rule 612 did not apply to it. 
We hold appellant has not shown that the trial court abused its
discretion in refusing to admit the document under Rule 612.

C.              
Field sobriety test video

The field sobriety video was redacted by agreement of
appellant and the State.  Appellant
initially raised an objection regarding whether Officer Stallman knew it was a
true and correct copy but later withdrew the objection.  During Officer Stallman’s cross-examination,
appellant played the video multiple times.

Appellant now complains that the video contains
impermissible narration by Officer Tillman. 
Any objections to the contents of the video were waived when appellant
failed to raise an appropriate objection when the State sought its
admission.  See Tex. R. App. P. 33.1(a);
Mendez v. State, 138 S.W.3d 334, 341–42
(Tex. Crim. App. 2004) (requiring record show timely, specific objection and
ruling by trial court to preserve complaint for appellate review).  We hold appellant’s objections regarding the
admission of the field sobriety test video have been waived.

In a separate point of error, appellant argues that the
trial court erred in admitting the field sobriety tests because Officer
Stallman did not establish the reliability of the tests.  No such objection was ever made at
trial.  Accordingly, any error has been
waived.  Id.  

We overrule appellant’s seventh and twelfth points of
error.

D.              
Breath test results

Appellant argues that the breath test results were
admitted through the wrong witness.  Two
people testified about the breath test: Officer Stallman and Leigh Ann
Speno.  Officer Stallman testified about
the actions he took in conducting the breath test as well as the results of the
test.  Speno is a forensic scientist
employed by the Texas Department of Public Safety in their forensic alcohol
breath laboratory.  She maintains the
breath testing program in five counties, including Brazoria County.  Speno testified that the breath test
equipment was operating properly at the time the test was conducted and stated
the results of the test.

Near the end of the State’s examination of Speno, the
State sought to have the test results admitted into evidence.  Appellant argued that the test could not be
admitted through Speno and that they could only be admitted through Officer
Stallman.

To establish a proper predicate to admit the results of an
accused’s breath test in evidence, the State is required to show: (1) the
machine functioned properly on the day of the test as evidenced by the running
of a reference sample through the machine, (2) the existence of periodic
supervision over the machine and operation by one who understands the
scientific theory of the machine, and (3) proof of the results of the test by a
witness qualified to translate and interpret such results.  Harrell
v. State, 725 S.W.2d 208, 209–10 (Tex. Crim. App. 1986).  It is not necessary for the operator to
understand the scientific theory of the machine.  Reynolds
v. State, 204 S.W.3d 386, 389 (Tex. Crim. App. 2006).  Because it is not necessary for the operator
to understand the scientific theory of the machine but it is necessary to show
periodic supervision over the machine by one who understands the scientific
theory of the machine, the clear implication is that two witnesses are commonly
necessary to lay the proper predicate for admission of the breath test
results.  We hold that once the proper
predicate has been established, the evidence can come in through any witness
involved in establishing the predicate.

Appellant also complains that Speno’s testimony
established that, in preparation for her testimony, she had not looked through
the records to determine the number of times that the equipment in question had
been repaired and that the equipment was outside of its warranty.  A witness’s familiarity with whether the
equipment is outside of its warranty may serve to impeach the witness’s opinion
that the machine was in working order, but it goes to the weight of the
testimony not its admissibility if an adequate predicate has otherwise been
laid.  Here, Speno testified that the
breath test equipment was operating properly at the time the test was conducted
and stated the results of the test. 
Accordingly, the lack of the testimony about warranties and repair work
does not require exclusion of the breath test results.

Appellant next argues that Speno’s testimony established
that the results of a breath test could be affected by (1) paint fumes; (2)
someone wearing a lot of cologne; (3) the testee having a fever of 101.6º F or
higher; and (4) a very hot room temperature. 
These are only hypothetical factors that could potentially affect the
breath test results.  There is no
evidence in the record that any of these factors were actually present for
appellant.  This again goes to the weight
of the evidence and not its admissibility.

Furthermore, the testimony at trial established that
during the testing process, the equipment performs a test of the ambient
air.  If paint fumes or strong cologne
had been present during appellant’s test, the equipment would have detected it
and invalidated the test.  The equipment
did not detect any fumes or cologne.  

The testimony also established that, if appellant had had
a fever of 101.6º F, then that would have resulted in the test results
increasing by 0.003.  Appellant’s lowest
test showed appellant had an alcohol concentration of 0.165.  Assuming appellant had a fever of 101.6 º F,
his test results would actually have been, 0.162.  This is still well above the amount
permissible by law.  Tex. Pen. Code Ann. §§ 49.01(2)(B),
49.04(a) (Vernon 2003).  

Finally, the testimony established that, if the room
temperature were excessively hot, the equipment would not function.  Because the equipment did function, the jury
could properly infer that the room was not excessively hot.  We hold there was a sufficient predicate for
admission of the breath test.

We overrule appellant’s ninth and fourteenth points of
error. 

                                                                                                                                                    
Closing Argument

In his sixth point of error, appellant argues that the
trial court abused its discretion in not allowing his counsel to discuss the
applicability of article 14.01 of the Texas Code of Criminal Procedure during
his closing argument.

A.              
Standard of review

A criminal defendant is allowed to argue any defensive
theory supported by the evidence admitted at trial.  Arnold
v. State, 68 S.W.3d 93, 102 (Tex. App.—Dallas 2001, pet. ref’d).  Argument that misstates the law or is
contrary to the court’s charge is improper. 
Whiting v. State, 797 S.W.2d
45, 48 (Tex. Crim. App. 1990); Sholars v.
State, 312 S.W.3d 694, 702 (Tex. App.—Houston [1st Dist.] 2009, pet.
ref’d).  We review the trial court’s
application of the law de novo.  Wiede, 214 S.W.3d at 25.

B.              
Analysis

During appellant’s closing argument, the following
exchange occurred:

Defense: The charge in this case, it says that an
officer may arrest without a warrant a person who commits an offense which
[occurs] in the Officer’s presence or view.  It didn’t happen here. [Officer
Stallman] didn’t see a thing. . . .  So if you didn’t see him driving the vehicle
he was alleged to be in, you cannot say beyond a reasonable doubt that he was
operating a motor vehicle.

State: Objection. The question of reasonable
suspicion goes to Officer Diaz’s stop and not to Officer Stallman’s arrest.

Trial Court: Sustained.

State: Ask the jury to disregard.

Trial Court: The jury will be instructed to
disregard the last statement of [defense counsel] as an incorrect statement of
the law. . . .

Appellant relies on article 14.01 of the Texas Code of
Criminal Procedure to support his claim that this argument was correct.  This article, however, was not a part of the
charge.  Appellant’s counsel’s argument
that it was, in fact, part of the charge was incorrect and improper.  Sholars,
312 S.W.3d at 702.

We overrule appellant’s sixth point of error.

                                                                                                                                                                
Jury Charge

In his tenth and eleventh points of error, appellant
argues that the trial court erred by limiting its instruction regarding
warrantless searches to Officer Diaz only and by including provisions from the
Texas Transportation Code in the charge.

A.              
Standard of Review

In reviewing a claim of jury charge error, the first step
is to determine whether there is error in the charge.  Barrios
v. State, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).  If there was error and appellant objected to
the error at trial, reversal is required if the error “is calculated to injure
the rights of the defendant,” which has been defined to mean there must be
“some harm.”  Id. 
If error exists, but was not objected to, reversal is not required
unless the error is so egregious that the defendant was denied a fair and
impartial trial.  Id.  

B.              
Scope of instructions regarding warrantless
searches

Appellant argues that the charge limits its instructions
regarding warrantless searches to Officer Diaz only.  Appellant, however, cites to a portion of the
record that has nothing to do with the charge. 
The portion of the charge relating to warrantless searches states the
following:

You are instructed that under our law no evidence
obtained or derived by an officer or other person as a result of an unlawful
stop and detention shall be admissible in evidence against such accused.  An officer is permitted to make a temporary
investigative detention of a motorist if the officer has specific articulable
facts, which, taken together with rational inferences from those facts, leads
him to believe that a person detained actually is, has been, or soon will be
engaged in criminal activity.

The jury’s charge does not contain the limitation that
appellant claims to be an error.  Accordingly,
there is nothing for us to review.

Appellant also argues that the trial court failed to allow
an instruction for the jury to consider whether Officer Stallman personally
witnessed the offense as appellant argues article 14.01 of the Texas Code of
Criminal Procedure requires.  Appellant
never made a request for such an instruction to be in the charge.  Moreover, the State never relied on 14.01 as
authority for arresting appellant. 
Instead, the State relied on article 14.03(a)(1) as authority for
arresting appellant.  See Tex.
Code Crim. Proc. Ann. art. 14.03(a)(1). 
The trial court was not required to include instructions on law that was
not applicable.

We overrule appellant’s tenth point of error.

C.              
Inclusion of provisions of the Texas
Transportation Code

Appellant argues that the trial court erred by including
provisions from subtitle C, title 7 of the Texas Transportation Code in the
charge.  Appellant raised a timely
objection to the inclusion of these provisions. 
As we have already stated, the State relied on article 14.03(g)(2) of
the Texas Code of Criminal Procedure to establish that Officer Diaz’s Terry stop was authorized.  Article 14.03(g)(2) authorizes an officer
outside of the jurisdiction of his municipality to conduct a Terry stop based on a reasonable
suspicion that any portions of subtitle C, title 7 of the Texas Transportation
Code have been violated only if the suspected violations occurred within the
same county that the municipality is located. 
Tex. Code Crim. Proc. Ann.
art. 14.03(g)(2).  For the jury to
determine whether the Terry stop was proper, then, the jury had to first
determine whether Officer Diaz could have reasonably suspected that the
applicable violations actually occurred. 
Accordingly, it was necessary for the charge to identify the portions of
subtitle C, title 7 of the Texas Transportation Code that Officer Diaz could
have relied on to form his reasonable suspicion.  All of the provisions of the Texas
Transportation Code identified in the charge are within subtitle C, title 7 of
the Texas Transportation Code and, accordingly, were properly included in the
charge.

Appellant challenges the factual bases for each of these
statutes.  If Officer Diaz could have
reasonably believed that one of the statutes was being violated, there is no
error.  Cf. Marinos v. State, 186 S.W.3d 167, 175 (Tex. Crim. App. 2006)
(holding when alternative grounds for committing an offense are submitted to
the jury, conviction is appropriate if evidence supports one).  Section 545.401 provides, “A person commits
an offense if the person drives a vehicle in willful or wanton disregard for
the safety of persons or property.”  Tex. Transp. Code Ann. § 545.401.  Officer Diaz testified that appellant turned
suddenly in front of him, forcing Officer Diaz to apply his brakes quickly in
order to avoid colliding into appellant’s vehicle.  We hold that there was sufficient evidence
for the jury to have determined that Officer Diaz could have reasonably suspected
that section 545.401 had been violated.

We overrule appellant’s eleventh point of error.

                                                                                                                                                  
Motion for Mistrial

In his fifteenth point of error, appellant argues that the
trial court erred in denying his mistrial due to juror misconduct.

A.              
Standard of Review

“A mistrial halts trial proceedings when error is so
prejudicial that expenditure of further time and expense would be wasteful and
futile.”  Ocon v. State, 284
S.W.3d 880, 884 (Tex. Crim. App. 2009).  
We review the denial of
a motion for mistrial under an abuse of discretion standard.  Id. 
“An appellate court views the evidence in the light most favorable to
the trial court’s ruling, considering only those arguments before the trial
court at the time of the ruling.”  Id. 
An appellant has the
burden of proving an allegation of juror misconduct.  Hughes v. State, 24 S.W.3d 833, 842
(Tex. Crim. App. 2000).

B.              
Analysis

At the time of the trial court’s ruling, there was no
evidence in the record that there was any juror misconduct.  See
Ocon, 284 S.W.3d at 884 (holding evidence of misconduct must be before
trial court at time of ruling).  Instead,
there was only the motion by appellant’s attorney, “I would like to make a
motion on the record regarding the information that [counsel for the State]
gave us, speaking to the officer as being improper jury conduct.”  Appellant did not make any further attempt to
get the relevant information into the record. 
The trial court denied the motion.

The next day the trial court raised the issue with the
jury.  It was revealed that one of the
jurors had seen Officer Stallman in the afternoon of one of the days when
Officer Stallman had testified in the morning. 
The juror asked Officer Stallman if he was required to be there or if he
had chosen to stay.  There is no evidence
in the record that Officer Stallman responded. 
Five other jurors heard this exchange. 
All of the jurors, even those who did not hear it, stated that the
exchange did not influence them in any way during their deliberations.  Appellant did not seek to ask any questions
or renew his motion.

Article 36.22 of the
Code of Criminal Procedure provides, in relevant part, that “[n]o person shall
be permitted to converse with a juror about the case on trial except in the
presence and by the permission of the trial court.”  Tex.
Code. Crim. Proc. Ann. art. 36.22 (Vernon 2006).  Because the exchange in question did not
relate to the case, the trial court did not abuse its discretion in denying the
motion for mistrial.  Iness v. State, 606 S.W.2d 306, 315
(Tex. Crim. App. 1980). 

We overrule appellant’s fifteenth point of error.

                                                                                                             
Appellant’s Thirteenth Point of Error

In his thirteenth point of error, appellant argues, “The trial court erred in its determinations
regarding the charge, as well as the omission and admitting of evidence which
resulted in the jury’s rendition of improper verdict resulting in legal and factual
insufficiency to support the verdict.” 
Appellant dedicates slightly more than two pages to this argument.  These two pages consist primarily of lengthy
block quotes of two court opinions and of a list of fact issues appellant
believes he raised.  The block quotes
concern (1) the evidentiary requirements before a question concerning the
lawfulness of obtaining certain evidence can be submitted to the jury and (2)
the standard of review for factual-sufficiency challenges.[7]  See
Manley v. State, No. 07-08-0116-CR, 2009 WL 1393293, at *3 (Tex.
App.—Amarillo May 19, 2009, no pet.) (memo. op., not designated for
publication); Baker v. State, 177
S.W.3d 113, 117 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  The list of fact issues are not supported by
any citations to the record.  Appellant
otherwise only makes general references to the Texas Code of Criminal
Procedure, the United States Constitution, and the Texas Constitution and
states without support that a thirty-minute deliberation time by the jury was
“an insufficient time to weigh any of the facts or law presented in this case.”  He ends the point of error by stating, “The
trial court committed reversible error because the legal and factual
sufficiency were lacking to support the verdict.”

An appellant’s brief must “contain a clear and concise
argument for the contentions made, with appropriate citations to authorities
and to the record.”  Tex. R. App. P. 38.1(i).  If an argument is not adequately briefed,
there is nothing for the appellate court to review.  Russeau
v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005).  We hold that appellant has not presented
anything for review in his thirteenth point of error.

We overrule appellant’s thirteenth point of error.

                                                                                                                                                                   
Conclusion

We affirm the judgment of the trial court.

 

 

                                                                   Laura
C. Higley

                                                                   Justice


 

Panel consists of
Justices Keyes, Higley, and Bland.

 

Publish.   Tex. R. App. P. 47.2(b).











[1]           See Tex. Pen. Code Ann. § 49.04
(Vernon 2003).  An offense under section
49.04 is a felony if it is shown on the trial of the offense that the person
has two previous convictions for DWI.  Id.
§ 49.09(b)(2) (Vernon Supp. 2010).





[2]           See Tex. Pen. Code Ann. § 12.42 (Vernon
Supp. 2010).





[3]           Tex. Pen. Code Ann.
§§ 49.04, .09(b)(2).





[4]           Appellant argues that there was no testimony establishing
that Sweeny, Texas was an incorporated city as required by article 2.12.  We may take judicial notice that a city is
incorporated and do take judicial notice that Sweeny, Texas is an incorporated
city.  See Payan v. State, 199 S.W.3d 380, 383 (Tex. App.—Houston [1st
Dist.] 2006, pet. ref’d) (holding courts can take judicial notice of
incorporated cities); Texas State Library
and Archives Commission,
http://www.tsl.state.tx.us/ref/abouttx/popcity12000.html (last visited September
30, 2010) (identifying Sweeny as an incorporated city).





[5]           Appellant argues that the stop was not justified based on
article 14.03(a) of the Texas Code of Criminal Procedure.  We do not need to address this argument as we
have already determined that the stop was justified based on article
14.03(g)(2).





[6]           In his fourteenth point of error, appellant also argues
that Leigh Ann Speno, one of the State’s witnesses testifying about the breath
test results, was not qualified to testify as an expert and that the trial
court erred by allowing Speno’s testimony without confirmation of her
calibration reports.  Appellant did not
raise an objection to either of these issues at trial.  Any error that may have existed has been
waived.  See Tex. R. App. P. 33.1(a);
Mendez v. State, 138 S.W.3d 334, 341–42
(Tex. Crim. App. 2004) (requiring record show timely, specific objection and
ruling by trial court to preserve complaint for appellate review).





[7]           Appellant never asked for a question concerning the
lawfulness of obtaining certain evidence to be submitted to the jury.